**Herbert LOWERY, Appellant,**

**v.**

**Rosalie MILLER et al., Appellees.**

**No. 7037.**

Court of Civil Appeals of Texas.

Beaumont.

Jan. 23, 1969.

Sumner Williams Jr., Robert L. Flournoy, Lufkin, for appellant.

Harry Wright, Port Neches, W. Everett Sanderson, Nederland, for appellees.

KEITH, Justice.

This three-way lawsuit resulted in Miller being awarded judgment against Lowery for $7,420.00 for conversion of 63 head of cattle which he had secured possession of by issuing a check to Miller's agent, Smith, and then stopping payment thereon. Smith had dealt similarly with Lowery some time before and was indebted to Lowery in the amount of $7,437.45, for which Lowery recovered judgment in this action. Lowery, but not Smith, has appealed from a judgment following a trial to a jury.

Lowery, the operator of a cattle auction in Angelina County, had sold to Smith 128

head of cattle in May, 1965, received Smith's check therefor in the amount of $10,334.42; but Smith, while representing that his check was good when he got the cattle, stopped payment thereon before it could clear the banks. He kept the 128 head of cattle. Smith and Lowery had had some dealings since then and Smith had given Lowery "a little bunch of cattle to pay on such check", leaving a balance of $7,437.45, which Smith refused to pay. In the final judgment rendered herein Lowery recovered judgment against Smith.

Approximately six months after the Lowery-Smith transaction mentioned above, Lowery decided to collect the debt due him from Smith by purporting to purchase cattle from Smith, giving him a check in payment therefor, and stopping payment thereon—just as Smith had done to him. Lowery was, therefore, going to use his own self-help to collect his debt. If there were no rights of third parties intervening, we would leave the parties where we find them. However, the 63 head of cattle which Lowery obtained from Smith did not, under the findings of the jury supported by competent evidence, belong to Smith. Such cattle belonged to Miller, who had placed them with Smith on consignment to sell for her account. Instead of being able to offset Smith's debt against his, Lowery now finds himself in the unenviable position of having his debt from Smith still due and owing (albeit he has recovered judgment therefor in this action); and, not having paid for Miller's cattle, being required by the judgment so to do.

Lowery comes forward with six points of error, all of which, after consideration, are overruled and the judgment of the trial court affirmed.

Before considering the several points brought forward, we state the substance of the jury's findings: (1–A) the 63 head of cattle belonged to Miller; (1–B) and were not owned by Smith; (1) Lowery did not purchase the 63 head of cattle from Smith

in good faith in the regular course of business; (2) being submitted conditionally upon the prior issue, was not answered; (3) Lowery purchased the 63 head of cattle from Smith "relying upon the ownership being in" Smith; (4) Miller entrusted the 63 head of cattle to Smith to sell "without disclosing the name of his principal;" (5) that Lowery did not know that Smith was selling the cattle as an agent; (6) that on the date of the sale of the 63 head of cattle, Smith owed Lowery money; (7) which was in the amount of $7,437.45; (8) and failed to find that when Lowery purchased the 63 head of cattle from Smith he knew or should have known that the cattle belonged to Miller. The remaining issues, being conditionally submitted, were not answered. No complaint is made as to the form of the issues or of the sufficiency of the evidence to support the findings.

No issues as to the value of the 63 head of cattle having been submitted or requested, the Court found the value to be $7,420.-00 (apparently upon the theory that both Smith and Lowery had so valued them) and entered the judgment mentioned previously.

Lowery's six points are all briefed together, and will be so treated in this opinion. Citing first the case of Hudgins Produce Co. v. J. R. Beggs & Co., Tex.Civ. App., 185 S.W. 339 (no writ, 1916), Lowery claims the benefit of the rule that one who purchases from an agent property an undisclosed agent has entrusted to him to sell, in good faith, relying upon the ownership being in the agent, is entitled to assert any defense he had against the agent when sued by the owner. We have no dispute with the abstract proposition as asserted by Lowery as postulated in the cited case.

Lowery labors under the distinct disadvantage of having a jury finding that he did not act in good faith—the keystone of the *Hudgins Case*. Next, Lowery relies upon Jarbe Oil Co. v. Birdwell & Son Drilling Co., Tex.Civ.App., 335 S.W.2d 394

(writ ref., n. r. e., 1960). Again, we accept the holding of that case and point to the fact that Lowery must overcome the finding of the jury that he did not acquire the 63 head of cattle either in good faith or in the regular course of business. (Special Issue No. 1). His invocation of the rule that where one of two innocent persons must suffer for the wrongful act of a third, he who gave the power to do the wrong must bear the burden of the consequences is a good rule in essence. Lowery's reliance thereon, however, is misplaced because he was not an "innocent" party entitled to the protection of the rule. He was, and is, unable to claim the benefits of the rule upon which he now relies.

Lowery's final reliance upon the language found in 2 Amer.Jur.2d, Agency, Sec. 325, p. 681, is unavailing for, again, he is confronted with the requirement of "good faith", an indispensable element, and one denied to him by the jury verdict.

The basic difficulty under which Lowery labors in this appeal stems from the devious manner in which he sought to procure cattle to offset his debt due from Smith. Admittedly, he was close in the offsetting amounts: $7,437.45 due from Smith to Lowery with Lowery taking cattle worth $7,420.00. Not having acted in good faith, having taken Miller's cattle (and not Smith's), and having judgment against Smith for his debt, Lowery is in the same position as he was before his scheme was conceived. He is in no worse position than he was when he got Miller's cattle. Swann v. Rotan State Bank, 115 Tex. 425, 282 S.W. 789 (1926). The judgment simply requires that he pay for Miller's cattle. It is correct and is in all things affirmed.